CARRIE E. BONNELL ET AL. v. FRANK W. BROWN.

ACCOUNTING FOR CORPORATE STOCK HELD IN TRUST.

A transfer of corporate stock, not then paying dividends, by sisters to their brother to enable him to be elected to a salaried position in the corporation, may, in an action for an accounting many years later, when the stock has become valuable, be declared an assignment in trust by parol for the sisters, and in the absence of evidence of express disclaimer of the trust by the brother, or acts necessarily implying disclaimer for a

Bonnell v. Brown.

period equal to that prescribed in the statute of limitations, laches of the sisters or running of the statute cannot be interposed as a bar to the accounting.

**C. W. Baker,** for plaintiffs.

**Horstman & Horstman,** for defendant.

**GIFFEN, J,**

This case [*Carrie E. Bonnell and Allie L. Morris* v. *Frank W. Brown*] involves the title to 2006 shares of stock in the Reading Turnpike Company which originally belonged to the estate of Lloyd S. Brown, deceased, father of plaintiffs and defendant. The plaintiffs claim that they assigned their interest therein to the defendant in trust to enable him to be elected as secretary and treasurer of the company, and that he agreed to account to them for all dividends declared and the proceeds of any sale that might be made of the turnpike; on the other hand the defendant claims that the transfer was absolute upon consideration that he agreed to and did assume the payment of a debt of $4,613.88, owing by the estate of Lloyd S. Brown, deceased, to the turnpike company, which consisted of unpaid and unclaimed dividends to sundry stockholders and held by Brown as treasurer of the company.

The plaintiffs testify positively that on account of their youth and inexperience in business they requested delay in making the transfer in order to obtain the independent advice by their counsel, Judge Conner, but being assured by defendant that he would account to them for all dividends and proceeds of sale received by him, and relying upon such promise and having implicit confidence in him as their brother, they joined with their mother, as administratrix of the estate, in a transfer of the stock to the defendant. He testifies on pages 235 and 236 of the transcript of the evidence that negotiations were had with his mother and Mr. John Cooper, president of the company, and that he finally accepted the stock and agreed to assume the debt of the estate. He denies that he had any conversation with his sisters, and it nowhere appears that the mother was authorized or assumed to act for them, or that they were informed of the result of the negotiations, except as may be inferred from the act of signing the transfer, which is not by them denied and is entirely consistent with their version of the transaction.

The defendant's own testimony therefore fails to show that the contract with the mother was binding upon the sisters unless afterwards ratified by them, and in the absence of other contradictory

Hamilton County.

,evidence we must hold the proof offered by plaintiffs to be of that clear and convincing character necessary to fasten a trust by parol ·evidence upon a conveyance absolute.

The defendant pleads laches and the statute of limitations; but lapse of time as between trustee and *cestui que* trust is no bar, unless the trustee disclaims the trust either expressly or by acts that necessarily imply a disclaimer for a period equal to that prescribed in the act of limitations.     *Williams* v. *Presbyterian Soc.* 1 Ohio St. 478; .Sec. 4974 Rev. Stat.

The turnpike stock was transferred in 1881, and about ten or twelve years thereafter one of the plaintiffs, according to their testimony, made demand of defendant for her share of the dividends, and he replied "you will never get it" and at another time he made no reply to the demand, but took his hat and walked out of the house in .a petulent mood, or as the witness expressed it "got mad." This and ·other like testimony of the plaintiffs does not necessarily imply a disclaimer of the trust, and the testimony of the defendant excludes any thought or opportunity of disclaiming as appears on page 237, to wit:

"Q.   When did you see your sisters to talk anything about that transaction after it occurred? A.   Well I never had any talk with them, except they would twit me in a sarcastic manner for years afterwards; they knew I wasn't making any money for years afterwards ·out of it; didn't until after Mr. Cooper's death."

Again at page 240:

.   "Q.   Did either of them at any time until shortly prior to the ·commencement of this suit ask for any part of the dividends or of the pike proceeds? A.   Never have asked me. The first intimation I ever had that they thought they were entitled to anything out of this pike was a letter I received from Judge Ferris asking me to come to his consultation room in the city. I received that letter during the first week of September, 1904, about three months before they brought this suit."

The plaintiffs aver in their amended petiton that their brother ·promised that if they would transfer their stock to his name, so that he would appear as the owner of the same, he would pay out of his ·salary any dividends as their father's estate might be liable for, and that he was then drawing a large salary.

They testify that they understood at that time that he was receiving .a salary of $1,200 per annum.

We are of opinion therefore that he is entitled to credit himself with such amount as will together with the salary received make an

·Bonnell·v. Brown.

allowance of $1,200 per annum from the date of the transfer until demand made in 1893 for an account; and thereafter, having rendered valuable services in the interest of the trust, he should be allowed a credit of such sum as will together with the salary received amount to $600 per annum until 1904, when a portion of the pike was sold; all such amounts to bear interest. He should also account for all dividends and proceeds of sale received by him on account of such stock together with interest on the several amounts from the time received. We find· the amount in the hands of defendant to be accounted ·for October 3, 1907, $9,904.18, subject to verification by counsel.

Decree accordingly.